The Judges pronounced their opinions.
JUDGE TUCKER.
The history of this cause in all its branches, as spread upon the record, is complicated, and most of the facts appear very uncertain.
The bill charges that Williams Coles, grandfather of the appellee, Walter Coles, the elder, being informed that his son Walter was paying his addresses to a young lady whom he supposed to be entitled to a considerable fortune, on the 4th of September, 1768, wrote the following letter to Mrs. Darracott, then a widow, and mother of the young lady.
Coleshill, Sept. 4, 1768.
“Madam,
“My son informs me he is paying his respects to your '^daughter which is very pleasing to his mother and me. I intend giving him now to the value of 3,0001. current money, in lands, slaves, and other things. At mine, and his mother’s death, will leave him the land I now live on, with my possessions in Ireland, and some slaves. I am, &c.
“W. Coles.”
It may not be improper here to state, that Coleshill, the place where the writer then lived, is affirmed in the answer of Mary Payne, (the defendant in one of the suits, which were heard together in the Court of Chancery,) to have been the property of Lucy Coles, the wife of Williams Coles, the writer of the letter: and that she, having been married to a former husband named Dabney, had by him a son called William, who dying, has left a son of the same name still living, and heir at law to the said Lucy Coles, his grandmother.
The marriage between Walter Coles and Miss Darracott took effect not long after the date of the above letter. On the 28th of March, 1769, Walter Coles, being ill, made his will, which was proved and admitted to record in October following, by which he gave to his wife the property which he had with her as a marriage portion, and ten pounds for mourning; and then “gave and bequeathed to his father and mother all and singular the remaining part of his estate of any nature or kind soever, to them and their heirs for ever, and constituted his father his sole executor.”
A few months after this, Walter Coles, the present appellee, and the only issue of that marriage, Was born; not long after which a suit was brought in his name and behalf, by Isaac Winston, his guardian, for a specific performance of the promise contained in the before-mentioned letter, then in the complainant’s possession. Williams Coles, the defendant, put in an answer thereto, admitting the letter; which is sworn to the 17th of September, 1771. The deposition of Elizabeth Darracott, the complainant’s grandmother, appears to have been taken the 8th of Eebruary 387 'preceding; but by what authority does not appear. That of William Darracott, her son, appears to have been taken the first of June, 1780. The magistrates certify that it was taken in that suit, “according to law.” The suit appears to have been no further proceeded in. Mr. Wickham, of counsel for the appellee, Coles, objected to the admission of that bill as evidence in the cause. This I think brings the case within a narrower compass.
Williams Coles died intestate, leaving the appellee, Walter Coles, his heir at law: he left also two daughters, from one of whom the appellants, John Payne and Mary Jackson, are descended, the latter being the daughter of Mary Payne, sister of John, the other appellant.
Lucy Coles, the widow of Williams Coles, and grandmother of the appellant, Walter, being the mother of his father, and one of the objects of his bounty in his will, survived her husband, Williams Coles, several years and died testate, having made a will bearing date March 5th, 1784, which was proved and admitted to record, May 5th, 1785. By that will, after several inconsiderable legacies, “she gave all the remainder of her estate, also her ready money, to her grandchildren Mary and John Payne; (above named;) also one hogshead of tobacco which was in hand.” She also appointed Mrs. Sarah Syme, wife of Col. Syme, trustee and manager for her daughter, Mary Payne (who then resided in Philadelphia) and her children, (John and Mary aboved named,) and appointed several executors; of whom, as it is said, her grandson Walter Payne alone qualified, and soon after removed himself out of the state, and went beyond seas, without ever possessing himself of any part of her estate, and has never since been heard of.
- The bill, which was originally brought by John Payne and Mary Payne, infants, by Mary Payne, their mother and next friend, suggests that William Darracott, the uncle of the defendant, Walter Coles, having obtained letters of administration on the estate of Williams Coles, the deceased husband of Lucy, previously to the probate of her will, had 388 *taken possession of her whole estate, alleging that her slaves and personal estate were the estate of his intestate Williams, her husband, and that her lands had either descended upon his nephew, Walter Coles, as heir at law of the said Williams, or was his right in consequence of the before-mentioned letter. That Darracott, having made a crop on the land, afterwards made such a distribution of the estate, as to him seemed meet, leaving the defendant, Walter Coles, in possession of the land, and far greater part of the other estate. That Darracott is since dead, having appointed the defendant Price (now also dead) his executor, who took upon himself that office.
*152 The appellants in their bill claim the benefit of the marriage promise contained in Williams Coles’s letter before mentioned; and also of a verbal promise which they allege to have been made by him to William Darracott, brother to the lady whom Walter Coles the elder married, viz. that, if the marriage should take effect, he would give his son Walter, at the time of his marriage, his plantation in Goochland County, and sixteen or eighteen negroes, with the stock upon that plantation.
The appellee, Walter Coles, in his answer to this bill, says, that it may be true that Williams Coles, his grandfather, did write such a letter as is set forth in the bill; but, for greater certainty, refers to such proof as the complainants can bring concerning the same. He has understood that the said letter was written at the instance of Mrs. Darracott, his grandmother, and that the said Williams was induced to write it by information received from her, or from other relations of his mother, that her fortune was much more considerable than it was afterwards found, to be. In various other parts of his answer he speaks of that letter, and of its operation and effect, in such a manner as appears to me to manifest no doubt of its having been actually written, as charged in the bill. He positively denies the verbal promise.
*It will be proper to state, that, about six months after the commencement of this suit in the High Court of Chancery, the defendant, Walter Coles, instituted a suit in Chancery in Hanover County Court, against Mary Payne, then a widow, and the appellants, John and Mary, her children, then infants, and others, the object of which was to set aside the will of Huey Coles, his grandmother, whose heir at law he states himself to have been. This suit, on the petition of Mary Payne, was removed by certiorari into the High Court of Chancery. The defendant, Mary, there filed her answer, in which, among other things, she denies that Walter Coles, the complainant in that suit, is heir at law to her mother, Huey Coles; William Dabney, her great-grandson, then living, being her heir at law: and avers, that the estate which he has possessed himself of, or the greater part of it, was her mother’s inheritance. This answer imports to be the joint and separate answer of herself and her children, John and Mary, above named. Several depositions were taken in that cause, and both causes were set for hearing by the counsel for the appellants. They were heard together, and the Chancellor dismissed both bills. Coles did not appeal from the decree against him in the suit in which he was plaintiff.
Although, by the acquiescence of the plaintiff in the decree pronounced in the last-mentioned suit, the decree in that cause cannot be reviewed here, yet as both suits related in fact to the same subject matter, (being in the nature of cross causes,) and were heard together, I am of opinion that the record and proceedings in that suit are so far to be regarded as a part of the record in that which is now before the Court, as that-the evidence arising out of the record may be applied by the Court in the consideration of the case before us. But, as to the record in the suit broug-ht in Hanover County in behalf of the appellee, Walter Coles, then an infant of two or three years of age, by Isaac Winston his guardian, against Williams Coles, his grandfather, it appears to me that Mr. Wickham’s 390 exception to the admission of it *as evidence in this suit was very well founded; there being no sort of privity that I can discover between the present appellants and the defendant in that suit. But, although that record, for the reason just mentioned, ought not to be admitted as evidence in this cause; yet it furnishes a circumstance which, I conceive, might have led the Chancellor to direct an issue to determine whether Williams Coles did, or did not, write the letter charged in the appellant’s bill; inasmuch as the object of the bill, thus brought by the guardian of the appellee, was to establish the existence of that very letter, and to obtain a specific performance of the promise therein contained, in behalf of his ward: referring to the said letter as then in the complainant’s possession, and the answer of Williams Coles to that bill, which answer is on oath, confesses that he did write such a letter.
The letter of Mr. Williams Coles to Mrs. Darracott (as charged in the bill) contains, in my opinion, a promise founded upon a valuable consideration, the proposed marriage between his son and her daughter, which, although not made either to his son, or to the young lady, would, upon their intermarriage, enure to the benefit of both; and might also enure to the benefit of the issue of their marriage, if not performed during the continuance of it; which promise a Court of Equity might enforce in such manner as might be most beneficial for the parties claiming and entitled to the benefit thereof:(a) for, as the former part of the promise contained no specific description of the things meant to be given as a portion immediately upon the marriage, but merely a promise of giving lands, slaves, and other things, to the value of 3,0001. ; if Walter Coles had died intestate, leaving his wife and several children living, I conceive that, upon a bill brought by these parties against the grandfather for a specific performance of his promise, a Court of Equity would have decreed such a performance thereof (by apportioning the lands, slaves, and money to be conveyed, purchased or paid,) as would enure to the benefit, not only of the heir at law, but of the younger children, and the widow: 391 *the marriage portion, which she brought, being one of the inducements to the promise; and the younger children entitled to participate, with the heir, in whatever slaves or personal property might have been intended to be given. As to Coleshill, if it belonged to the grandfather, that part of the promise would have enured exclusively to the benefit of the heir at law. So, probably, would the promised possessions in Ireland. With which we have nothing now to do.
Again; as this was a promise which a *153 Court of Equity would enforce, and execute, so, also was it capable of being released, entirely, by the husband in his life-time; or by his last will and testament wherein he should make such a provision for his widow as she should accept. It might be questionable how far a release made by a last will and testament would in this case have barred the widow’s claim to a specific execution of a marriage promise, made in consideration of the portion which she brought to her husband, if she had renounced all benefit under the will of her husband, and brought a bill against his father for the performance of his promise: but, as she did not, but has altogether acquiesced under her husband’s will, it is unnecessary to consider that question.
It appears that the devise in Walter Coles’s will o£ all and singular the remaining part of his estate of any nature or kind soever to his father and mother, and their heirs for ever, operated as a release to the father, of the obligation contained in his letter to Mrs. Darracott, as far as the same was not executed, in his life-time, by the gift of lands, slaves, and other things, to the value of 3,0001. : for, quoad hoc, the promise was a chose in action; and, by a bequest thereof to the husband and wife jointly, if the subject thereof had been in the hands of another, and the husband had received it, or reduced it into possession, the whole would have rested in him jure mariti. But the husband being the person liable to the action on account of this chose in action, and the same being given 392 to him and his wife, "the action is thereby extinguished forever: for he can neither sue himself, nor can his wife sue him: the bequest, therefore, must operate as a release; for if an action be released for an hour only, it is extinct for ever, (a)
But, with respect to the land at Coleshill, if it, in fact, did belong to Williams Coles, the promise, on his son’s marriage, vested in him an equitable title to the same on his father’s death, which was devisable by his will, according to the authority of Greenhill v. Greenhill, 2 Vernon, 679. (b) The same, I presume, may be said of the possessions in Ireland. In this case, then, there being a devise in fee-simple to husband and wife, they were properly neither joint-tenants, nor tenants in common: for, being considered as one person in law, they could not take the estate by moieties, but both were seised of the entirety, per tout et non per my; the consequence of which was, that neither husband nor wife could dispose of any part thereof without the assent of the other, but the whole remained to the survivor, (c) So that, whether the Coleshill lands were originally the property of Williams Coles, of his wife Buey, the fee-sim - ple thereof was in the latter at the time of making her will, and passed to the appellants under the residuary clause in her will. But, as to the slaves and personal property of Walter Coles, the son, I conceive that, if they were reduced into possession by his father in his life-time, as legatee, (and not merely as executor of his son,)(d) the right of his wife thereto was merged in the marital rights of the husband ; and consequently did not survive to her as the right in the lands would.
But here we must consider an objection, upon which the decree of the Chancellor, dismissing the appellant’s bill, was probably founded, viz. that the existence of the letter from Williams Coles to Mrs. Darracott, as charged in the bill, is neither admitted by the answer, nor proved by any other evidence whatsoever; and, secondly, that it is not proved that the inheritance of Coleshill was in Mrs. Buey Coles, instead of her husband.
*It is very true that the defendant Walter Coles has not in his answer expressly admitted the letter; neither has he directly or indirectly denied it. He refers, for greater certain!}', to such proof as the complainants can bring concerning the same; and, as I have before observed, speaks of the letter in various parts of his answer in such a manner as manifests no doubt of its existence. The appellants, or their counsel, probably relying that the bill exhibited by the appellants’ guardian for the purpose of establishing and .enforcing a specific performance of the promise contained in that letter, would be admitted as evidence not only to establish its existence, but the fact that it was in the appellee’s possession, have not given themselves the trouble to exhibit any other proof of it. Under these circumstances, I doubt whether the Chancellor ought not to have directed an issue to inquire whether such a letter was ever written by Williams Coles, or not. So, also, with respect to the title which Buey Coles had to the estate at Coleshill, which her daughter Mrs. Payne, one of the defendants in the cross-bill, who answered in behalf of the appellants, her children, as well as of herself, states to have been the original inheritance of her mother. This, as not being responsive to any direct charge in the bill, may not be such evidence as is sufficient to establish that fact; and yet I am inclined to believe it ought to have led the Chancellor to direct an inquiry into the nature of her title to that estate; as also, what other estate real or personal she was seised or possessed of, as her own property, at the time of making her will; the residuary clause of which appears to me to furnish sufficient reason for such an inquiry, and to be sufficient to pass the same to her residuary legatees.
I am, therefore, of opinion that the decree of dismission ought to be reversed, and the cause sent back, with directions conformable to what I have said.
JUDGE ROANE.
The counsel for the appellants rightly considered this case as under two aspects; 1st. As relative 394 to *any right to real property which the appellants, as claiming under old Mrs. Coles, may have by virtue of the letter mentioned in the proceedings; and, 2dly. As to such other real property as that lady might have had a right to as of her own separate inheritance.
As to claims to personal property, it is *154 not shown nor pretended that any such existed in her favour which were not reduced by her husband into possession during the coverture.
With respect to both the first-mentioned descriptions of claims, the first question is, whether the proceedings in the suit brought by the appellee against his grandfather during his minority in Hanover Court, to which his grandmother was no party, and which is particularly objected to as evidence by the appellee, in the court below, were competent to bind her; and I am of opinion they were not, inasmuch as in respect of real propert3r a wife has, as it were, a separate existence, and therefore must be made a party to a suit respecting it before it can bind her. It is also a rule of evidence that no person can take the benefit of the proceedings in any suit, or any verdict, who would not have been prejudiced thereb3’, if it had gone against him. (a) The consequence of this principle applied to the present case is, that the appellants, as claiming under old Mrs. Coles, cannot give in evidence any of the proceedings in the before-mentioned suit: there is, consequently, no testimony whatever left remaining in the cause, to establish the existence, or the extent of the marriage promise on which the appellants’ pretensions are bottomed: the admission of the appellee (from report) of the possibility, or even probability,of such a letter,cannot have such effect, as he expressly calls on the appellants to prove their case in this particular, and in truth admits nothing, as to the purport or extent of that letter. The claim of the appellants, therefore, as arising under the marriage promise, is left without an3r foundation to rest on.
With respect to a claim of land as of the separate inheritance of old Mrs. Coles, that seems to be a new idea. Such 395 *a claim is not advanced, nor charged, in the bill before us, and is wholly unsupported by any testimony, if we except some general expressions, as to this point, of Mrs. Payne, the guardian of the appellants, in her answer to the suit brought in Hanover Court, to set aside old Mrs. Coles’s will: but the rule is well settled, that the answer of a defendant in Chancery is not evidence where it asserts a right affirmativelv in opposition to the plaintiff’s demand, but that, in such case, he is as much bound to establish it by independent testimony as the plaintiff is to sustain his bill. On this subject I would refer to the case of Beckwith v. Butler, 1 Wash. 224, as expressly, in point. In that case an executor, when called on to account and to say what were the particulars and amount of the estate of the testator, swore that a part of that was his (the executor’s) property, by reason of a gift to him by the testator; and there being no other testimony of this gift, it was held by this Court to be monstrous to permit an executor to swear himself into a part of the testator’s estate.
I must, therefore, also say that there is no evidence in this cause of any separate property having existed in old Mrs. Coles, in anv of the lands of which her husband was possessed. The general calls in the appellee’s bill in Hanover Court which were •relied on to justify the answer in this particular, on the ground of its being responsive to the bill, are perhaps far less competent to have that effect than the call for an account was in the case of Beckwith v. Butler.
I am of opinion, therefore, to affirm the Chancellor’s decree, upon the testimony in this cause: but, were this testimony even supplied, my opinion on the merits would not be different.
Admitting that, in point of sheer law, the interest of this land would have passed (had the land been ascertained and identified) both by the wills of Walter Coles and old Mrs. Coles, I am strongly inclined to believe that in neither case was it intended. With respect to the former will, we are now in the dark; but with re-396 spect to the latter, while *there is, on one hand, no iota of testimony, to shew that the testatrix ever considered this as her property, there is on the other hand abundant testimony proving that she considered it as the property of the appellant. Under these circumstances, therefore, the aid of a Court of Equity ought not to be afforded to frustrate the expectations of the testatrix herself, as well as wholly to disinherit, in favour of strangers, the only issue of that marriage, to further and promote which the promise in question is supposed to have been made. Besides, independent of all testimony on this point, it is scarcely credible, as upon the face of the will itself, that this property was contemplated: for, while this good lady was particularly parcelling out her shoebuckles and teaspoons, &c. among her descendants, it is hardly to be believed that she would not have also particularly designated this immense interest, had it been so designed or intended.
With respect to directing an issue as to the marriage promise in this case, we are told, 2 Fonb. 494, that, where the evidence is full, the Court will not direct an issue at law at all: and so, e converso, I presume, an issue will not be directed, when the claim is altogether unsupported by testimony, which is the case before us.
As to an issue respecting Mrs. Coles’s separate inheritance, we are told in the same book,"p. 495, that an issue ought not to be directed to try a title not alleged in the plaintiff’s bill: and, i lthough it is added, by way of exception, that if a matter does appear to the Court, at the hearing, which goes to the very right, the Court will sometimes order an issue to try it; yet in the case before us, the matter in question does not legally appear to the Court, by reason of the objection to the affirmative character of the answer in this particular as aforesaid.
JUDGE EUEMING.
The claim of the appellants to the estate in controversy is founded on a letter, containing a marriage promise, charged in their bill to have been written by Williams Coles, grandfather of the appellee, and addressed to Elizabeth Darracott, when a marriage was 397 about *to take place between Walter Coles, son of the former, and Mary *155 Darracott, daughter of the latter, (which marriage took effect,) and the subsequent will of Walter Coles, the son, dated the 28th of March, 1769. And they come into a Court of Equity to assert their right.
The first point made in the cause, by the appellants’ counsel in their statement, is of seeming importance, to wit, “that Williams Coles could dispose of no part of the lands which descended to Lucy his wife, by inheritance,” or to which she was entitled in her own right “by purchase.” But there is neither proof, nor charge in the bill, that any of the lands in the seisin of Williams Coles, were either the inheritance or purchase of Lucy his wife; and all that appears in the record on that subject is in the answer of Mary Payne, to the bill of the appellee to set aside his grandmother’s will; wherein she uses this expression — '“notwithstanding that the greater part of the Virginia estate, then in question, and now in question in this Court, was the inheritance of the said Lucy:” which I conceive to be a mere idle suggestion that ought to have no effect on the cause.
It is the unanimous opinion of the Court, that no part of the record in the suit brought in Hanover Court, by the guardian of the appellee, in his behalf, in the time of his early infancy, is proper or admissible evidence in this cause: and that being altogether rejected, it may, with propriety, be asked, where is the evidence to be found to prove the existence of the letter, or to substantiate the marriage promise charged in the bill? There is none that proves it to my satisfaction. And, as to directing issues to try whether any of the land in question was the inheritance of Lucy Coles, the appellee’s grandmother; and whether such a letter from Williams Coles to Mrs. Darracott, as stated in the bill, did exist; I think it improper to direct an issue to try any fact not charged in the bill; and I am not for hunting evidence that may tend to deprive an only child of the estate and inheritance of his father, in whose 398 'x'will (it must be obvious to every one) he was pretermitted, solely, for want of knowledge in the father, when he made his will, or at the time of his death, that the mother was in a state of pregnancy. Any other supposition would be against every principle of justice, natural affection, and humanity. Nature has implanted in the birds of the air, and in the beasts of the field, a strong affection, and tender re1 gard for their own offspring. And, had the marriage promise been sufficiently proved, as stated in the bill, I might, perhaps, have been of opinion that, in equity, it ought to operate in favour of any issue that might be the fruit of the marriage; for such issue must, undoubtedly, have been in the contemplation of thp parties to the contract at the time of the making it: and 1 should have made a long pause, before I could have decided in favour of the appellants, to the exclusion of the appellee from any part of the estate, rights and interests of his father. And such have been the impressions of our Legislature on the subject, that, so long ago as the year 1785, in the “act concerning wills and the distribution of intestates’ | estates,” ample provision is made for posthumous children, and such as are pretermitted in any last will and testament, though in life at the death of the testator. (a)
I am of opinion, upon the whole, that the decree is correct, and ought to be affirmed.

 See Tabb v. Archer, 3 H. & M. 399; Chichester’s Ex’x v. Vass’s Adm’r, ante, p. 98.

 Co. Litt. 280, a.

 Prec. in Ch. 330, S. C.; 1 Pow. on Devisos, 205.

 2 Bl. Com. 182.

 See Wallace v. Talliaferro, 2 Call, 470.

 2 Bac. 616 and 1 H. & M. 174, Baring v. Reeder.

 1 Rev. Code, c. 92, s. 3.